The clause in the agreement of sale relative to the commission to be paid, as it appears on page 6 of the transcript, is as follows:

"In case I fail to comply with the above offer if accepted I agree to pay to J. Hy. Blache a commission of $ per cent, and all fees and costs incurred in enforcing collection. In case I do not comply with this offer, vendor is to pay the commission of 4 per cent." etc.

It is needless to try to interpret this clause of the contract of sale, for we have found that the plaintiff was not legally chargeable with any violation of the contract, and therefore incurred no liability to pay a commission.

Finding no error in the judgment appealed from, it is affirmed at appellants' cost.

O'NIELL, C. J., absent.

174 La. 530

## SIMPSON v. SIMPSON.
### No. 31068.

Supreme Court of Louisiana.
March 30, 1932.

James L. Dormon, of Shreveport, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook and Edward Barnett, all of Shreveport, for appellee.

ODOM, J.

Prior to 1921, this plaintiff and defendant became involved in litigation, the exact nature of which is not disclosed, and in April, 1920, they agreed to "compromise and dismiss and settle said suit." By notarial act, in which it was declared that, "In consideration of the premises and the settlement and dismissal of said suit," this plaintiff, Mrs. Simpson, sold to the defendant, under full warranty of title, a certain lot and the residence thereon on Highland avenue in the city of Shreveport, with the following reservation:

"The said Mrs. Ada Hicks Simpson, reserving however, the usufruct and use of said property during her natural life with all rights and claims appertaining thereto."

The act further provides that, "in consideration of the premises," the said Tom B. Simpson paid to Mrs. Simpson $260 in cash, and "as a further consideration binds and obligates himself to repair and paint said building located upon the above mentioned property and binds and obligates himself to keep said property in good repair, paying all taxes and assessments against the same and keeping the same insured * * * for an amount approximating the value of the said building, loss if any, to be used in reconstructing another building on said premises to be likewise subject to the life usufruct of the said Mrs. Simpson."

As a further consideration of the transfer of this lot and house to said Tom B. Simpson,

this defendant, he granted unto her "the usufruct" of a residence owned by him situated in said city on Vine street, "with full and complete authority to collect all rents therefrom for her own use and benefit so long as she lives, binding and obligating himself to keep said property in repair and to pay all taxes and insurance thereon at his own cost and expense."

The said notarial act of compromise and settlement of said suit provides that, in case Tom B. Simpson, defendant here, should fail to carry out the terms and conditions of the transfer of the naked ownership of the property by Mrs. Simpson to him, said property "herein conveyed to him shall revert to the said Mrs. Ada Hicks Simpson and this transfer of said property shall thereupon become null and void without she being required to refund any amount already received at the time of said reverting, and her usufruct to the house at 448 Vine Street shall cease."

Then follows the following pertinent paragraph:

"But before said forfeiture shall be declared, the said Tom B. Simpson shall have thirty days' written notice of the exact matters in which he has failed to comply with the terms and conditions herein and only on his failure to so comply after such written notice can such forfeiture be declared."

In accordance with this act of compromise and settlement the old lawsuit was dismissed.

The present suit was filed on February 7, 1930, alleging that defendant, Tom B. Simpson, had failed to comply with his obligation to keep the two residences in good repair, and for that reason it had been necessary for her to spend $521.81 for repairs thereon; she prayed for judgment against him for that sum, and adjudging "the reversion to her" of the property which she had transferred to him and adjudging her to be the owner thereof and revoking and rescinding the compromise and agreement and "reinstating the said suit (meaning the old lawsuit which had been dismissed) on the docket of your honorable court to be further proceeded with in due course according to law."

The defendant resisted these demands on the ground that he had fully complied with all the obligations imposed upon him by the act of compromise and settlement.

The lower court rejected plaintiffs' demands, but found that defendant should make certain repairs to the house on Highland avenue, and gave him ninety days in which to make them. Plaintiff appealed.

(1) Plaintiff has brought up a record of more than 250 pages; 200 pages of which being testimony touching the question whether defendant complied with the obligation which he assumed to keep the two residences in good repair. After reading it and the briefs filed, and after a careful consideration of all the testimony and all points raised, our opinion is that the lower court made no error in his ruling.

At the time this compromise and settlement of the old suit were made and this agreement entered into, Mrs. Simpson, who is the stepmother of defendant, was living in the residence which she transferred to defendant with reservation of the usufruct. The other house, the one on Vine street, was then leased. Shortly after the agreement was entered into, the exact date not being shown, but evidently in the year 1920, Mrs. Simpson made written demand upon defendant to "arrange the porches as they were before, so that they can be used for the purpose that galleries are intended to be, within thirty days from the date hereof, or I shall declare the contract null and void." This had reference to the house on Vine street.

■ Immediately following receipt of this notice, defendant employed a contractor to "arrange the porches." He says that, before doing so, he took plaintiff on a journey through the city in order that she might observe other residences and pick out the style of porch she wanted built. She says she has no recollection of this. But whether she did or not, the facts are that defendant had the porch rebuilt at a cost of over $900. Mrs. Simpson offered some testimony showing that this porch or "gallery" was not constructed as it should have been. Defendant offered testimony showing that it was. But whether it was or not, Mrs. Simpson cannot now be heard to say that it was not, because she used the house for more than nine years without giving defendant written notice that any additional repairs were wanted.

The contract provides that before a forfeiture shall be declared the defendant "shall have thirty days written notice of the exact matters in which he has failed to comply with the terms and conditions herein." If these repairs were not properly made, Mrs. Simpson should have given defendant written notice to that effect. Having failed to give this written notice, she cannot now complain.

■ (2) Mrs. Simpson asks that she have judgment for $521.81 for items of expense which she incurred in making minor repairs between December 6, 1920, and April 26, 1929, as set out on a list which she attached to her petition. She failed to prove all these items. But conceding that they are all correct, she cannot recover the amounts, for the reason that she made the repairs without first giving the defendant written notice that they were needed. She says he knew they were needed and refused to make them. If so, she should have served written notice as required by the contract. This she failed to do.

■ (3) On July 23, 1929, she served written notice on defendant setting out that he had

failed to comply with his obligation to keep the property in repair. This notice apparently has reference mainly to the house in which she lived on the Highland avenue, the one she sold to defendant, reserving the usufruct. In enumerating the repairs which she wanted made, she mentioned the electric wiring, painting of the house, repairing of the roof, the steps, the plumbing, which she said was rusty and leaked, and generally, as to this house, she said: "The house has been allowed to fall into such a bad state of repair that it is practically falling down."

She further said: "As to the property at 448 Vine Street, the roof has been allowed to get into a leaky condition and needs repair."

Immediately after receiving this notice, defendant employed a general contractor named Frazier, and gave him blanket instructions to make all such repairs as were necessary and wanted by Mrs. Simpson. He says he had the wiring repaired, had the house painted with two coats, repaired the roof, had all the rooms papered, and repaired the plumbing and the steps. He says he left it in good repair. The painter, the plumber, the carpenter, the man who repaired the roof, and the electrician were all called as witnesses. Each said he did all the work in his line that was needed and demanded by Mrs. Simpson. The electrician said he rewired the house and put in new fixtures; the plumber said he repaired the plumbing and put in some new fixtures; the roof man that he left the roof in good condition; the painter that he went over the house with steel brushes, removed all loose particles of paint and put on two coats and papered the rooms. Mr. Frazier and all the others testified that they did all that Mrs. Simpson asked them to do. The total cost to defendant amounted to approximately $1,400.

These repairs were made between July and December, 1929.

On checking the items or exact repairs demanded by Mrs. Simpson in her letter of July 23, 1929, it appears that everything that she required was done. That defendant was in good faith, that he had done all that he understood Mrs. Simpson wanted done, is clearly shown.

(4) After or about the time this work was completed, and apparently to the satisfaction of Mrs. Simpson, who is quite advanced in years, her nephew, Mr. Hicks, who it seems had been sojourning in other parts for several years, appeared upon the scene and was much displeased with the conditions which he found. He immediately inspected the house in which his aunt was living and found many defects.

He had prepared what is termed a "supplemental notice" to defendant setting out all the defects and served it on defendant, coupled with a demand that these defects be remedied, otherwise Mrs. Simpson would demand a cancellation of the agreement. When this notice was received, defendant sent some of the workmen back with instructions that they remedy the defects. They made some of the repairs demanded in this second notice but not to the satisfaction of young Hicks, and the present suit was soon filed.

Later on, Mr. Hicks had the house inspected by C. C. Davenport, general inspector for a building and loan association, who reported that the foundation should be leveled up and repaired, that the porch floor, gutters, and downspouts should be repaired, that there should be a new roof and new floors throughout, new doors and new windows, and a new stairway. When he was called as a witness, he said his report to Mr. Hicks was based upon the theory of modernizing the house, not merely repairing it. He used as a standard that which would be required by the building and loan association if a loan upon it was contemplated, which standard he says was very high, much higher than was used ten years ago.

Mr. Garson also made an inspection at the request of Mr. Hicks in April, 1930. He found defects, but was less exacting than was Mr. Davenport.

The defects which he pointed out were due largely, he said, to the fact that the house was old and that the foundation had settled. A great many of the defects which he pointed out were not mentioned by Mrs. Simpson in her written notice to defendant in July, 1929, and were overlooked when it was gone over by Frazier and others in the fall of 1929.

The house was old. It was built in 1903 out of lumber salvaged from a building originally on Texas avenue. Both Mr. Garson and Mr. Davenport, who are rigid inspectors, said that the house was not a first class job to begin with. Naturally, it was not a first class modern structure when this suit was tried.

■ Mrs. Simpson had no right to demand that it be made like new, or that it be modernized. The repairs contemplated and which she had a right to demand under the contract were such as would make the house safe and comfortable for ordinary use.

The lower court correctly found that certain repairs are yet to be made, and ordered defendant to make them within ninety days. His ruling is well founded both in law and in equity.

■ The further time granted by the judge for making these repairs is authorized by article 2047 of the Civil Code. Equitably, defendant should be given this chance. Mrs. Simpson called upon him twice to make repairs, once in 1920 and again in 1929. Each time he made what we think was a bona fide effort to comply with her demands at an expense of approximately $2,400.

The contract did not require that defendant

watch these houses and remedy every possible defect which might arise. Mrs. Simpson had possession of them and was in position to know better than defendant when and what repairs were needed, and for that reason the contract provided that she should notify him in writing of the defects.

In view of the facts which we find, the law cited by counsel has no application.

Judgment affirmed.

O'NIELL, C. J., absent.